# IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF ALABAMA
### EASTERN DIVISION

| | | |
|---|---|---|
| **MORRIS LEWIS, *et al.*,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:15-cv-112-WKW-PWG** |
| | ) | |
| **HUGH MCCALL,** | ) | |
| ***et al.*,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## ORDER AND REPORT AND RECOMMENDATION

This case arises out of claims by Plaintiffs Morris Lewis and Lewis Transportation (collectively referred to hereinafter as "Lewis") that the Defendants have engaged in discriminatory assignments of tow-truck jobs and have ultimately removed Lewis Transportation from the rotations list for such assignments. The following are named as Defendants: Hugh B. McCall, the Director of the Alabama Department of Public Safety ("Department"); Post Commander Sergeant McWaters; Lieutenant Suzanne Capps; Captain Ron Short; and Major Kerry Chapman. Defendant McCall is sued only in his official capacity while the remaining defendants are sued both their individual and official capacities.

1

Lewis's Complaint is the operative pleading. (Doc. 1). Therein, Plaintiff seeks to state federal claims arising out of both the Due Process and Equal Protection Clauses of the Fourteenth Amendment, by and through the remedial vehicle of 42 U.S.C. § 1983.[1]  Before the court is Defendants' motion to dismiss the Complaint. (Doc. 8).  For the reasons stated herein, the Magistrate Judge **RECOMMENDS** that Defendants' motion to dismiss is due to be **GRANTED in part** and **DENIED in part.**

## I.     JURISDICTION

Subject matter jurisdiction over Lewis's federal claims is conferred by 28 U.S.C. § 1331.  The parties do not dispute venue or personal jurisdiction, and there are adequate allegations in Lewis's Complaint to support both.  On October 21, 2015, this matter was referred to the undersigned by Chief U.S. District Judge W. Keith Watkins for disposition or recommendation on all pretrial matters.  (Doc. 20).  *See also* 28 U.S.C. § 636(b); Rule 72, Fed. R. Civ. P.; *United States v. Raddatz,* 447 U.S. 667 (1980); *Jeffrey S. v. State Board of Education of State of Georgia,* 896 F.2d 507 (11th Cir. 1990).

---

[1]  Lewis states in connection with his due process claims that several defendants "failed to provide a hearing which met the touchstones of due process as afforded by the Fourth Amendment of the U.S. Constitution.  (Doc. 1 at p. 8).  It appears that Lewis inadvertently cited the Fourth Amendment as opposed to the Fourteenth Amendment.  In any event, Lewis fails to advance in the Complaint any discernible claim under the Fourth Amendment.

## II.   LEWIS'S CLAIMS

Lewis brings claims for denial of equal protection (Counts One and Two) and denial of procedural due process (Count Three).

## III.   BACKGROUND AND FACTS[2]

Morris Lewis, an African-American male, owns Lewis Transportation, a towing service contractor.  (Doc. 1 at ¶¶ 1-2, 10, 17, and 20).  Lewis brought a federal lawsuit in 1991 in this court against the Alabama Department of Public Safety ("Department") and several individual Department representatives, *Lewis v. Alabama Department of Representatives*, No. 91-D-1463-E (M.D. Ala. filed on December 3, 1991) (hereinafter referred to as "*Lewis I*").  (*Id.* at ¶ 11).  As explained by United States District Judge Ira Dement in a Memorandum Opinion filed on August 10, 1993:

> The State of Alabama requires that each trooper post maintain a list of wrecker operators which troopers call on a rotating basis when the owner of a motor vehicle is unable to make a decision about a wrecker service to tow his vehicle.  The wrecker operators are private companies with no affiliation with the [Department].  The [Department] has adopted rules and regulations, the requirements of which wrecker operators must meet in order to be included on the list.  One of the regulations adopted by the Department [in 1987] is the requirement that the operator not be convicted of a felony or misdemeanor involving force, violence or moral turpitude.

---

[2] These are the facts for purposes of ruling on the pending motion to dismiss.  They are gleaned from the allegations in the Complaint.

3

(*Lewis I*, Doc. 37 at p. 1).

Lewis applied in 1990 with the Department for his tow truck company to be placed on the list of wrecker operators.  (*Id.* at 1).  However, his "application was denied" because he "had been convicted of five worthless check violations which have been held by the Supreme Court of Alabama to involve moral turpitude."  (*Id.* at pp. 1-2).  Lewis claimed that the Department's regulation requiring that the wrecker operator not be convicted of a misdemeanor involving moral turpitude violated his equal protection rights under the Fourteenth Amendment.  (*Id.* at p. 3). Judge Dement concluded that the regulation was unconstitutional in violation of the Equal Protection Clause for two reasons: (1) the regulation's "across the board prohibition against placing people on the rotation list who are misdemeanants and who have been convicted of crimes against 'moral turpitude' . . . is both over and under inclusive"; and (2) "[t]he regulation is enforced differently against people who apply with convictions and those who are convicted of such a misdemeanor or even a felony after being placed on the list."  (*Id.* at 5).[3]

Lewis states in his current lawsuit that, with respect to the assignment of tow truck jobs, "the State of Alabama by and through individual actors under color of

---

[3]  Judge Dement stated that the court did not "reach the issue of due process" since it concluded the regulation at issue had violated the Equal Protection Clause.  (*Lewis I*, Doc. 37 at p. 8 n.2).

state law continue to violate Lewis' constitutional rights to be free of race discrimination, arbitrary/capricious decisions and deprivation of procedural due process." (Doc. 1 at ¶ 11).  According to Lewis, "[t]he State of Alabama establishes rules and regulations for placement on the [assignment] list and requirements to stay on the list."  (*Id.* at ¶ 34).  The Defendants, who are members of the Department and collectively identified by Lewis as the Alabama State Troopers, "are the sole assignors of Tow truck Activities on Alabama interstate, county and state roads."  (*Id.* at ¶ 10).  The Alabama State Troopers, however, have "failed to follow their own internal regulations as to the order of the list, inclusion upon the list, and all rights and privileges during the appeals process where Lewis was removed from the list." (*Id.*).

Specifically, from 2009 until the present, Lewis became aware that the "Alabama State Troopers began to change the order for Tow Truck Activity assignments." (*Id.* at ¶ 10).  Lewis complained on multiple occasions during this time frame that the tow truck assignments were made in a racially discriminatory manner which, in turn, caused economic harm to Lewis.  (*Id.* at ¶¶ 10, 12).  While Lewis was at all relevant times qualified for the assignment list, the Alabama State Troopers "systematically removed or diverted the order of Lewis calls" and acted "through selective enforcement" to remove Lewis from the assignment list.  (*Id.* at ¶¶ 12, 19).

Defendants McWaters, Capps, Chapman, and Short are Caucasian and engaged in this conduct to remove Lewis from the list. (*Id.* at ¶ 21). Defendant McCall, an African-American male, "chose to ratify the conduct of the discriminatory officers under his supervision." (*Id.* at ¶ 21). According to Lewis, "Caucasian tow truck drivers and Caucasian companies were not punished for violating the same procedures wherein Lewis, the African American was removed from the list." (*Id.* at ¶ 12).[4]

Lewis appealed the decision of the Alabama State Troopers to remove him from the assignment list. (*Id.* at ¶¶ 14-15, and 25). A hearing with respect to Lewis's appeal was conducted in September, 2014, at which Defendant Short indicated that Lewis's removal from the list was inappropriate. (*Id.* at ¶15). Defendant Short further stated that Lewis could stay on the list during his appeal. (*Id.* at ¶ 25). However, at no time following his removal from the list has Lewis been returned to the assignment list. (*Id.* at ¶ 15). According to Lewis, the Alabama State Troopers "failed to provide a hearing where the result was determined by the evidence presented at the hearing" and instead "applied a more onerous standard to Lewis than other tow truck drivers." (*Id.* at 36).

---

[4] Nowhere in the Complaint does Lewis identify what specific procedures he purportedly violated.

## IV.   MOTION TO DISMISS STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the Complaint against the legal standard set forth in Rule 8: "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

When evaluating a motion to dismiss pursuant to Rule 12(b)(6), the court must take "the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff." *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "Determining whether a complaint states a plausible claim for relief [is] ... a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 663 (alteration in original) (citation omitted). "[F]acial plausibility" exists "when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The standard also "calls for enough facts to raise a reasonable expectation that discovery will reveal evidence" of the claim. *Twombly*, 550 U.S. at 556. While the complaint need not set out "detailed factual allegations," it must provide sufficient factual amplification "to raise a right to relief above the speculative level." *Id.* at 555.

"So, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, 'this basic deficiency should ... be exposed at the point of minimum expenditure of time and money by the parties and the court.'" *Twombly*, 550 U.S. 558 (quoting 5 Wight & Miller § 1216, at 233-34 (quoting in turn *Daves v. Hawaiian Dredging Co.*, 114 F.Supp. 643, 645 (D. Haw. 1953)) (alteration original). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556).

> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal*, 556 U.S. at 679.

8

## V.    DISCUSSION

### 1.    Defendants' Motion to Dismiss

#### Equal Protection Claims

Lewis claims in Count One that the Defendants violated his right to equal protection by racially discriminating against him in that they deprived "Lewis of opportunities to be called in the correct order when his name was next on the list" and then removed him from the list.  (Doc. 1 at ¶¶ 16-25).  Lewis further claims in Count Two that the Defendants violated his right to equal protection, asserting that he is "a class of one victim" and that the Defendants "arbitrarily and capriciously [failed] to follow their own state regulation."  (*Id.* at ¶¶ 26-27).[4]  Although the Defendants purport to dismiss the entire Complaint, they fail to address Lewis's equal protection claims in their motion.  (Doc. 9 at pp. 1 and 7).  Because the equal protection claims have not been addressed, however, they will not be reviewed on the merits and will survive this motion to dismiss.

#### Procedural Due Process Claim

Lewis claims in Count Three that the Defendants violated his procedural due process rights by: (1) removing Lewis from the correct order on the rotation list and

---

[4]  Within Count Two, Lewis includes assertions that the Defendants deprived him of procedural due process.  (Doc. 1 at ¶¶ 30-31).  These assertions directly relate to Lewis's due process claim in Count Three which will be considered below.

then completely removing him from the list; and (2) failing to provide a proper hearing. (Doc. 1 at ¶¶ 33-36).     A Fourteenth Amendment claim alleging a violation of the right to procedural due process under § 1983 requires a plaintiff to allege three elements: "(1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." *Arrington v. Helms*, 438 F.3d 1336, 1347-48 (11th Cir. 2006) (citations omitted). "Property interests stem not from the Constitution, but from such sources as statutes, regulations, ordinances, and contracts." *Arrington*, 438 F.3d at 1347 (citing *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 576-77 (1972)).  "Whether these sources create a property interest must be decided by reference to state law." *Arrington*, 438 F.3d at 1347 (citing *Roth*, 408 U.S. at 577).

Defendants contend in their motion to dismiss that there is no "Alabama statute, state administrative regulation, or any other source of Alabama law that might be construed to provide" an entitlement for Lewis to remain in the assignment list. (Doc. 9 at p. 2).  Relying primarily on the Eleventh Circuit Court of Appeals' decision in *Morley's Auto Body, Inc. v. Hunter*, 70 F.3d 1209 (11th Cir. 1995), the Defendants maintain that Lewis "cannot rely on a local policy or practice to establish a constitutionally protected interest."  (Doc. 9 at p. 4).

In *Morley*, the Eleventh Circuit considered whether two wrecker service companies in Florida had a constitutionally protected property interest in remaining on a wrecker rotation call list maintained by the Collier County's Sheriff's Office." *Morley*, 70 F.3d at 1211-12. The Sheriff of Collier County "had issued a document entitled the 'Collier County Sheriff's Office Wrecker Service Policy.'" *Id.* at 1211. Therein, the policy:

> specifies the various equipment and operating standards for wrecker service providers seeking to be placed on the rotation list, sets up an application process, and spells out the operational details of the rotation system. The policy also requires that wrecker services on the rotation list comply with the terms it specifies in order to remain on the list. The provisions of the policy are quite detailed.

*Id.* The plaintiff wrecker services ultimately were removed from the rotation list and had received no notice or opportunity for a hearing before they were removed from the list. *Id.* at 1211-12. Following a jury trial, the trial court entered judgment on the procedural due process claim in favor of the plaintiffs and against the defendants in their official capacities. *Id.* at 1211.

The Eleventh Circuit in *Morley's Auto Body* analyzed on appeal "whether any state decisional law, statute, or regulation having the force of law authorized or mandated creation of the entitlement that plaintiffs claim." *Id.* at 1214. As part of its analysis, the Eleventh Circuit considered two circuit court decisions that recognized

11

a constitutionally protected property interest in towing rotation lists, *Pritchett v. Alford*, 973 F.2d 307 (4th Cir. 1992) and *Abercrombie v. City of Catoosa*, 896 F.2d 1228 (10th Cir. 1989). In *Pritchett*, state regulations governed the wrecker rotation list at issue, requiring "every highway patrol district to establish wrecker zones and 'wrecker-rotation' lists for the zones" and directing "that the lists should be administered fairly and in a manner designed to ensure that all wrecker services on the list have an equal opportunity to the towing business arising from the rotation list." *Pritchett*, 973 F.2d at 317. The Fourth Circuit concluded that a wrecker service company has a constitutionally protected property interest in remaining on the rotation list based on the applicable state regulations in place. *Id.*

In *Abercrombie*, the plaintiff asserted a due process claim in connection with his removal from a city's wrecker rotation list. *Abercrombie*, 896 F.2d at 1230. The plaintiff relied on the State of Oklahoma's wrecker statute, which required the city "to make wrecker referrals on an equal basis as nearly as possible" to licensed wreckers working in or near the city limits. *Id.* at 1232. The Tenth Circuit recognized a constitutionally protected property interest in continual wrecker referrals based on the Oklahoma statutory requirement mandating referrals to be made on an equal basis. *Id.*

After discussing both *Pritchett* and *Abercrombie*, the Eleventh Circuit concluded that "the existence of a property right in such a case turns on whether the alleged claim of entitlement is supported or created by state law such as a state statute or regulatory scheme or decisional law." *Id.* at 1216-17. The Eleventh Circuit held with respect to the wrecker policy at issue in *Morley's Auto Body* that*:*

> if the plaintiffs had a protected interest in remaining on the wrecker rotation list in Collier County, that interest must be rooted in Florida law. The plaintiffs do not cite, and we have not found, any decision of any Florida Court indicating that they had an entitlement to remain on the rotation list. Neither do they cite, not have we found, any Florida statute, state administrative regulation, or any source of Florida law that might be construed to provide the asserted entitlement.
>
> Instead, the plaintiffs rely on the sheriff's wrecker rotation policy itself for the creation of the alleged property right. Their reliance is misplaced, because there is no Florida state law authority that elevates that policy to the status of a regulation with the force of law. The policy was issued in the sole discretion of the Collier County Sheriff and no state agency with statutory authority to do so has authorized the sheriff to create the entitlement the plaintiff urges us to recognize. Because any expectations arising from the wrecker rotation policy of a county sheriff are not grounded in Florida law, such policy does not give rise to a constitutionally protected property interest.

*Id.* at 1213-14.

In this case, the Defendants contend that Lewis has failed to cite any Alabama statute, state administrative regulation, or any source of Alabama law that might give rise to a constitutionally protected property interest in remaining on the wrecker rotation list. (Doc. 9 at p. 2-3). The Defendants also contend that Lewis's reference

to their failure to follow "internal regulations" is insufficient to confer a property interest in the asserted entitlement.  (*Id*.).

Plaintiff, however, identifies more than just "internal regulations" in the complaint.  In Lewis's previous lawsuit brought in 1991, which was cited by Lewis in the complaint, Judge Dement recognized that the Department had "adopted rules and regulations, the requirements of which wrecker operators must meet in order to be included on the [rotation] list."  While not specifying the requirements, Plaintiff alleges that the State of Alabama has established certain "rules and regulations for placement on the [rotation] list and requirements to stay on the list." (Doc. 1 at ¶ 34).  Furthermore, according to Lewis's allegations in the complaint, "the Alabama State Troopers as members of the [Department] are the sole assignors of Tow Truck Activities on Alabama interstate, county and state roads."   (*Id.* at ¶ 10).

When viewing the allegations in the complaint as true, Lewis has alleged enough to state a plausible claim for violation of procedural due process.  Lewis's allegations suggest that any such rules or regulations governing placement on the wrecker rotation lists may be sufficiently rooted in an Alabama statute or regulation.  Further factual development of this issue will allow the parties to identify the proper

14

source governing wrecker rotation lists in Alabama and whether such source confers a constitutionally protected property interest for Lewis to remain on the list.[5]

The Defendants assert qualified immunity to the procedural due process claim alleged against them in their individual capacities.  (Doc. 9 at 5-6).  "Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Lawrence v. City of Fairhope, Ala.*, 429 F.App'x 900, 902 (11th Cir. 2011) (quoting *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting in turn *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982))).  The Supreme Court has held that the doctrine of "[q]ualified immunity balances two important interests — the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

---

[5] It is axiomatic that procedural due process claims do not become complete unless and until the state refuses to provide due process. *See McKinney v. Pate*, 20 F.3d 1550, 1552 (11th Cir. 1994) (*en banc*).  Lewis alleges that a hearing with regard to this removal from the rotation list was, at first, cancelled, but then subsequently conducted in September 2014.  (Doc. 1 at ¶ 15). Lewis then asserts in connection with Ground Three that the Defendants "failed to provide a hearing which met the touchstones of due process" and "where the result was determined by evidence presented at the hearing." (*Id.* at ¶¶ 35-36).  The Defendants acknowledge that a hearing took place but offer scant details as to what actually happened at the hearing.  (Doc. 9 at p. 6).  Lewis's allegations suggest that the Defendants failed to provide an adequate post-deprivation hearing and are sufficient to maintain the procedural due process claim.

Qualified immunity protects public officials from broad-ranging discovery disruptive to effective government, *see id*. at 818, and operates as a shield against civil damages due to mistaken judgments.  *See Malley v. Briggs*, 475 U.S. 335, 343 (1986); *Butz v. Economou*, 438 U.S. 478, 507 (1978) ("[Public] officials will not be liable for mere mistakes in judgment, whether the mistake is one of fact or one of law.").  Qualified immunity is "an immunity from suit rather than a mere defense to liability...."  *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis omitted). Indeed, the "driving force" behind creation of the qualified immunity doctrine was a desire to ensure that "'insubstantial claims' against government officials [will] be resolved prior to discovery." *Anderson v. Creighton*, 483 U.S. 635, 640 n. 2 (1987).

Lewis has made sufficient allegations in the complaint to indicate that the Defendants violated a constitutional right of Lewis that was established at the time of the alleged violation of which a reasonable person would have known.  Further factual development of the relevant issues through discovery, however, may lead the Defendants seeking to reassert their right to qualified immunity.   Nothing in this recommendation should be construed as precluding the Defendants from reasserting the qualified immunity defense after discovery.  While recognizing that the defense of qualified immunity protects defendants from burdensome discovery, such a concern is not present in this case.  Lewis's equal protection claims will survive this

motion to dismiss and, because the due process claim and equal protection claims are closely connected, any additional amount of discovery directed to the due process claim will be minimal.  Accordingly, the Defendants' motion to dismiss Lewis's procedural due process claim against them in their individual capacities is due to be denied.

### Eleventh Amendment Immunity

Lewis sues each of the five individual defendants, as employees of the Department, in his or her official capacity. (Doc. 1 at ¶¶ 4-8).  The Defendants assert that they are each entitled to Eleventh Amendment immunity with respect to Lewis's claims against them in their official capacities.  (Doc. 9 at 6-7).

The Eleventh Amendment limits the power of federal courts to hear suits instituted by private litigants against a state.  The Amendment itself is quite brief, containing only forty-three words:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const., Amend. XI.  "Although the express language of the amendment does not bar suits against a state by its citizens, the Supreme Court has held that an unconsenting state is immune from lawsuits brought in federal court by the state's

own citizens." *Carr v. City of Florence*, 916 F.2d 1521, 1524 (11th Cir. 1990) (citing *Hans v. Louisiana*, 134 U.S. 1 (1890)).

Eleventh Amendment immunity can be averted.  The Supreme Court has recognized three situations in which a state may be subjected to suit in federal court. First, a state may affirmatively waive its sovereign immunity and consent to suit in federal court.  *See, e.g., Clark v. Barnard*, 108 U.S. 436, 447-48 (1883) (holding that a state's intervention in a federal court action "would be a voluntary submission to its jurisdiction").  Second, states and state officials may be sued by private individuals in actions seeking *prospective* injunctive relief for *continuing* violations of federal law.  *See Ex Parte Young,* 209 U.S. 123, 155-56 (1908).  Finally, Congress can abrogate the states' Eleventh Amendment immunity, but only when it unequivocally expresses an intent to abrogate the immunity through a clear legislative statement in the text of the statute itself,[6] *and*, when Congress acts pursuant to a valid grant of constitutional power.  Further, the objectives of valid enforcement legislation "must be the carefully delimited remediation or prevention of constitutional violations." *College Savings Bank v. Florida Prepaid Postsecondary Education Expense Board*, 527 U.S. 666, 672 (1999) (citing *City of Boerne v. Flores*, 521 U.S. 507 (1997)).

---

[6] *See, e.g*., *Atascadero State Hospital*, 473 U.S. at 243 ("Congress must express its intention to abrogate the Eleventh Amendment [immunity of the states] in unmistakable language in the statute itself.").

The Defendants' assertion is properly analyzed against that backdrop. "Congress has not abrogated eleventh amendment immunity in section 1983 cases" and the State of Alabama "has not waived its immunity." *Carr*, 916 F.2d at 1525. Thus, a suit under § 1983 seeking damages may not be brought against the State of Alabama. *See Zatler v. Wainwright*, 802 F.2d 397, 400 (11th Cir. 1986). Furthermore, "[i]t is . . . well-settled that Eleventh Amendment immunity bars suits in federal court when . . . an 'arm of the state' is sued." *Manders v. Lee*, 338 F.3d 1304, 1308 (11th Cir. 2003) (citing *Mt. Healthy City Sch. Dist. Bd. Of Educ. v. Doyle*, 429 U.S. 274, 280 (1977)).

To determine whether a defendant, while engaged in the relevant function, acts as an arm of the state, the Eleventh Circuit has set out a four-factor inquiry, taking into account: (1) how state law defines the entity; (2) what degree of control the state maintains over the entity; (3) the source of the entity's funds; and (4) who bears financial responsibility for judgments entered against the entity. *See Manders,* 338 F.3d at 1309. While recognizing this multifactor test, the Eleventh Circuit gives "great deference to how state courts characterize the entity in question." *Versiglio v. Board of Dental Examiners of Alabama*, 686 F.3d 1290, 1292 (11th Cir. 2012).

In this case, the Alabama statute creating the Department makes it clear that it is "a department of the State of Alabama." Ala. Code § 32-2-1. *See also Rutledge*

*v. Baldwin County Com'n*, 495 So. 2d 49, 51 (Ala. 1986) (characterizing the Department "as an agency of the State").   Furthermore, for Eleventh Amendment purposes, courts uniformly hold that the Department is an arm of the State of Alabama such that suit against it under § 1983 is barred.   *See, e.g.*, *Pittman v. Alabama Department of Public Safety*, No. 12-0347, 2012 WL 4355678, at *2 (S.D. Ala. 2012) (recognizing that the Department is "an arm of the state for Eleventh Amendment purposes"); *Farr v. Riley*, No. 2:08-cv-192, 2008 WL 1840733, at *1 (M.D. Ala. 2008) (holding that "[t]he Alabama Department of Public Safety is not subject to suit or liability under § 1983"); *Hayden v. Alabama Dep't of Public Safety*, No. 2:06cv948, 506 F.Supp.2d 944, 949 (M.D. Ala. 2007) (explaining that "[t]he status of the [Department] as an arm of the State of Alabama is not challenged"). Lewis articulates no challenge to whether the Department qualifies as an arm of the state of Alabama.

While Lewis does not bring suit against the Department, he sues several employees of the department in their official capacities.   Eleventh Amendment immunity is applicable because a suit brought against a state official in his or her official capacity, effectively, is a restatement of a claim against the state itself.   *See Hafer v. Melo*, 502 U.S. 21, 25 (1991).   Thus, "[u]nder the Eleventh Amendment, state officials sued for damages in their official capacity are immune from suit in

federal court." *Jackson v. Ga. Dep't of Transp.*, 16 F.3d 1573, 1575 (11th Cir. 1994). As employees of the Department, an arm of the State of Alabama, the Defendants are entitled to absolute immunity with regard to Lewis's § 1983 claims for damages against them in their official capacities and such claims, therefore, are subject to dismissal.

As discussed above, the one caveat to the rule regarding injunctive relief is that a plaintiff may circumvent Eleventh Amendment immunity when he is seeking prospective injunctive relief to bar ongoing unconstitutional action. *See Ex Parte Young, supra*. Lewis, therefore, "may pursue prospective relief (i.e., injunctive and declaratory) relief under § 1983 . . ." with regard to any viable § 1983 claim asserted against the Defendants in their official capacities. *Thomas v. Buckner*, No. 1:11-cv-245, 2011 WL 4071948, at *7 (M.D. Ala. 2011). In addition to seeking monetary relief, Lewis seeks both declaratory relief and injunctive relief against the Defendants. (Doc. 1, Prayer for Relief at ¶¶ 1-2). The Defendants fail to discuss in their motion to dismiss whether Lewis's claims seeking declaratory and injunctive relief against the Defendants in their official capacities are barred by the Eleventh Amendment. To the extent Lewis seeks such prospective injunctive and declaratory relief against the Defendants in their official capacities, his § 1983 claims survive this motion to dismiss and may proceed forward to substantive review.

21

## VI.   CONCLUSION AND RECOMMENDATION

Accordingly, for the reasons as stated, it is the **RECOMMENDATION** of the Magistrate Judge that the Defendants' motion to dismiss (Doc. 8) be **GRANTED in part** and **DENIED in part**. It is the Magistrate Judge's recommendation that the Defendants' motion to dismiss is due to be **GRANTED** only with respect to Lewis's § 1983 claims for damages against them in their official capacity.  It is the Magistrate Judge's recommendation that the Defendants' motion to dismiss is due to be **DENIED** in all other respects.

It is **ORDERED** that the parties shall file any objections to the said Recommendation on or before **February 19, 2016.**  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party objects.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*,

677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).

**DONE** and **ORDERED** this the 5th day of February, 2016.

 /s/ Paul W. Greene
United States Magistrate Judge